**TARA J. ELLIOTT**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, Montana 59807**
**105 E. Pine Street**
**Missoula, Montana 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: tara.elliott@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **BRUCE BOONE WANN,** Defendant. | CR 18-54-M-DLC **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE** |

## INTRODUCTION

Defendant has filed a motion for release under 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic. The United States requests that the motion be denied because the defendant has not met the "extraordinary and compelling

1

reasons" standard for compassionate release. It appears that Wann has exhausted his remedies with the BOP at this time.

## FACTS

### I. Wann's Offense, Sentence, and Motion for Release.

Wann is currently serving a 48 month sentence for Illegal Possession of a Machinegun in violation of 18 U.S.C. § 922(o), Possession of an Unregistered Silencer in violation of 26 U.S.C. § 5861(d), Possession of a Short Barreled Rifle in violation of 26 U.S.C. § 5861(d), and Possession of a Destructive Device in violation of 26 U.S.C. § 5861(d) at FCI Sheridan with an anticipated release date of February 22, 2022.

### II. The Bureau of Prisons' and Congress's Response to COVID-19

#### a. COVID-19-specific safety precautions

BOP has taken aggressive steps to protect inmates' health and has worked hard to try and keep COVID-19 outside of its facilities. "[M]aintaining safety and security of BOP institutions is [the BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (March 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp. As the BOP Director stated in his memorandum for inmate family and friends on April 21, 2020, "This pandemic is a global emergency and the BOP is taking proactive operational measures to safeguard each person entrusted to our care and custody."

https://www.bop.gov/resources/news/pdfs/202004211_memo_to_inmate_families_and_friends.pdf.

Indeed, the BOP has longstanding procedures for managing the threat of infectious disease, including protocols relevant to a variety of potential infections. *See, e.g.*, BOP Program Statement No. 6190.04, Infectious Disease Management (June 3, 2014), available at https://www.bop.gov/policy/progstat/6190_004.pdf. Tellingly, the BOP has had a detailed "Pandemic Influenza Plan" in place since 2012. *See* BOP Health Services Division, Pandemic Influenza Plan (October 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf.

The BOP began planning for COVID-19 in January 2020, developing policies in consultation with the Centers for Disease Control. *See* BOP, COVID-19 Action Plan: Agency-Wide Modified Operations (March 13, 2020) ("BOP Action Plan"), available at https://www.bop.gov/resources/news/20200313_covid-19.jsp; *see generally* BOP, COVID-19 Coronavirus (updated regularly), available at https://www.bop.gov/coronavirus/index.jsp.

Subsequently, in mid-March, the BOP implemented an action plan to "mitigate the spread of COVID-19" in prisons, for the protection of both inmates and staff. *See* BOP Action Plan, *supra*. Screening procedures are in place, visits have been restricted, and inmate movement is being reduced (and occurs only after COVID-19 screening) to help limit potential exposure in BOP facilities. *Id.*

Individual facilities have adopted "modified operations"--including staggered meal and recreation times--to promote social distancing. *Id.* In addition, BOP facilities have medical care available to all inmates.

    b.    **Administrative options available to inmates**

Inmates with COVID-19-based concerns have a variety of administrative options they can pursue through the BOP itself. Although not reviewable by courts, these options include far more flexible remedies than permanent reduction of a sentence under 18 U.S.C. § 3582(c)(2). *See generally* 18 U.S.C. § 3621(b) (precluding judicial review of BOP placement decisions); *Reeb v. Thomas*, 636 F.3d 1224, 1226-28 (9th Cir. 2011) (courts lack jurisdiction to review BOP's placement decisions under 18 U.S.C. §§ 3622-24); *United States v. Grass*, 561 F. Supp. 2d 535, 537 (E.D. Pa. 2008) (same).

## LEGAL FRAMEWORK

A district court generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) . . . ." 18 U.S.C.

§ 3582(c)(1). This relief, however, is permanent and therefore subject to strict statutory conditions.

First, a district court can evaluate a defendant's request for compassionate release only "after the defendant has fully exhausted all administrative rights" before the BOP. 18 U.S.C. § 3582(c)(1)(A). Specifically,

> [A]fter the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]

*Id.* This requirement is mandatory and jurisdictional. *See generally Shaw v. Bank of America Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) ("statutorily-provided exhaustion requirements deprive the court of jurisdiction") (quoting *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1197 (9th Cir. 1998)); *United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440, at *7-9 (D. Or. Apr. 6, 2020) (collecting cases).

Second, in evaluating compassionate-release requests, courts must follow both the statute and relevant, binding policy statements. USSG §1B1.13. Pursuant to those authorities, to be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and (2) that he is not a danger to the community. Specifically, 18 U.S.C. § 3582(c)(1)(A) requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission"—in this

5

case, USSG § 1B1.13. As the Supreme Court recognized in *Dillon*, because § 3582(c) permits a sentencing reduction only where it is "consistent with applicable policy statements issued by the Sentencing Commission," such policy statements are binding on a court determining eligibility. 560 U.S. at 826.

USSG §1B1.13 explicitly defines the "extraordinary and compelling reasons" that make a defendant eligible for compassionate release. *See* 28 U.S.C. § 994(t). They include, as relevant here, (1) a "terminal illness"; (2) a serious medical condition that "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG §1B1.13 (other grounds omitted). USSG §1B1.13, comment. (n.1(A)-(B)). "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.*, comment. (n.3).

A defendant bears the burden to prove both that he has "exhausted all administrative rights" and that "extraordinary and compelling reasons" exist to support his motion. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Greenhut*, No. 18-CR-48-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (defendant

bears the burden of establishing entitlement to sentencing reduction) (*citing United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)); *United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440, at *3 (D. Or. Apr. 6, 2020) (same).

Third, even for defendants who are statutorily eligible, compassionate release is a "rare" and "extraordinary" remedy, within district courts' discretion to deny. *United States v. Mangarella*, No. 06-CR-151, 2020 WL 1291835, at *2 (W.D.N.C. Mar. 16, 2020). Specifically, "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention would otherwise be warranted. *See, e.g., United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (collecting pre-trial detention cases); *accord United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("[M]ost courts treat compassionate release 'due to medical conditions [a]s . . . a rare event.'").

**ARGUMENT**

Wann has exhausted his administrative remedies, but this Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction[,]" or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy

7

statements issued by the Sentencing Commission." The pertinent policy statement is set forth at United States Sentencing Guidelines (USSG) §1B1.13. It prohibits this Court from reducing a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Sentencing Commission provides explicit examples of what constitutes an "extraordinary and compelling circumstance":

(A) **Medical Condition of the Defendant.**—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant** — The Defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.

(C) **Family Circumstances.** —

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

USSG §1B1.13 cmt. n.1.[1] Thus, in order to qualify for compassionate release having exhausted his or her administrative remedies with the Bureau of Prisons, a defendant must be able to demonstrate one of the listed reasons in (A)–(C) above. Wann cannot do so because he cannot show (1) a serious medical condition preventing self-care within BOP; (2) a lack of danger to the community; (3) extraordinary or compelling reasons to reduce his sentence; and (4) release is

---

[1] Application Note 1(D), the final example listed by the Sentencing Commission, is inapplicable to this situation. It provides as follows: "**Other Reasons.** — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG §1B1.13 cmt. n.1. In turn, BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. *See* https://www.bop.gov/policy/progstat/5050_050_EN.pdf. In this case, there is no need for the Court to rely upon the determination of the Bureau of Prisons on other reasons. Because Bureau of Prisons has not brought a motion on Defendant's behalf, the Bureau of Prisons did not identify another "extraordinary and compelling reason" under the application note.

warranted under the factors set forth in 18 U.S.C. § 3553(a).

> **A. Wann has not shown he has a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover.**

Here, the defendant submits that he has numerous medical issues. *See* Doc. 65 at 5. However, for his medical conditions to qualify as an "extraordinary and compelling reason" to warrant release under the statute, he also has to show that his ability for self-care has been substantially diminished and that he is not expected to recover from his medical condition. Wann indicates that he has an enlarged heart, a murmur, and "lack of air in his respiratory system". *Id*. While we are not minimizing these issues, these are not ailments that the BOP is unequipped to address and they do not meet the high bar for compassionate release required.

> **B. COVID-19 does not present "extraordinary or compelling reasons" to reduce this defendant's sentence.**

Although the COVID-19 pandemic is an extraordinary world event, Wann has failed to show that its impact on him, specifically, constitutes "extraordinary and compelling reasons" warranting his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Wann does not meet any of the listed reasons in USSG §1B1.13, nor can he describe any particularized reason why he should be released apart from any other convicted defendant serving time in FCI Sheridan. "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary

and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13." *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020). The Third Circuit echoed this principle in an appeal by an inmate at heightened risk because of his age (68) and health condition (Parkinson's Disease, diabetes, and heart issues):

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid-19.jsp.

*Raia*, 954 F.3d 594, 597 (3d Cir. April 2, 2020).

Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention would otherwise be warranted. *See, e.g.*, *United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (collecting pre-trial detention cases). Despite the COVID-19 pandemic, Wann's case is not one of those rare cases. Wann has not demonstrated that his current facility is unequipped to provide appropriate medical treatment if he were to become sick. He has not therefore shown that release is necessary to protect his health.

### C. Even if Wann were otherwise eligible for compassionate release, 18 U.S.C. § 3553(a) factors do not support a shorter sentence.

Finally, any compassionate-release decision—even for a statutorily eligible defendant—must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). Those factors—which are similar to the factors under 18 U.S.C. § 3142(g)—do not support his request for premature, permanent release. Wann received a sentence of 48 months from this Court on April 12, 2019, for Illegal Possession of a Machinegun in violation of 18 U.S.C. § 922(o), Possession of an Unregistered Silencer in violation of 26 U.S.C. § 5861(d), Possession of a Short Barreled Rifle in violation of 26 U.S.C. § 5861(d), and Possession of a Destructive Device in violation of 26 U.S.C. § 5861(d). Granting his motion under 18 U.S.C. § 3582(c)(1)(A) would undermine the relevant 3553(a) factors, including the need to (1) ensure that his punishment reflects the seriousness of the offense, (2) deter him and others from similar conduct in the future, and (3) avoid any unwarranted sentencing disparities. Therefore, even if the court were to find that the defendant's medical condition satisfies the "extraordinary and compelling" standard, the defendant's motion should be denied based on the 3553(a) factors.

### CONCLUSION

The United States respectfully requests that Wann's motion for release be denied.

DATED this 1st day of September, 2020.

                                KURT G. ALME  
                                United States Attorney

                                */s/ Tara J. Elliott*  
                                Assistant U.S. Attorney  
                                Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. LR 7.1(d)(2) and CR 12.1(e), the United States' response to Defendant's motion for release is proportionately spaced, has a typeface of 14 points or more, and has a body containing 2,694 words.

>   */s/ Tara J. Elliott*
>   Assistant U.S. Attorney
>   Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2020, a copy of the foregoing document was served on the following persons by the following means:

(1) CM/ECF
( ) Hand Delivery
(2) U.S. Mail
( ) Overnight Delivery Service
( ) Fax
( ) E-Mail

1. Clerk, U.S. District Court

2. Bruce Boone Wann
   Reg. No. 17374-046
   Federal Prison Camp
   P.O. Box 6000
   Sheridan, OR 97378

/s/ *Tara J. Elliott*
Assistant U.S. Attorney
Attorney for Plaintiff